

THE LAW OFFICE OF
TIMOTHY M. COLLIER, PLLC

**Timothy M. Collier, State Bar No. 030431**
**Law Office of Timothy M. Collier, PLLC**
**3295 North Drinkwater Blvd., Suite 9**
**Scottsdale, Arizona 85251**
**Tel.  (480) 855-1842**
**Fax (480) 718-8759**
**timothy.collier@tmcollierlaw.com**

*Attorney for Plaintiff Roselind Tonner*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ROSELIND TONNER, an individual, | Case No. _____ |
| Plaintiff, | |
| vs. | **VERIFIED COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| UNITED STATES OF AMERICA; NATIONAL PARK SERVICE, an agency of the United States Department of the Interior; UNKNOWN PERSONS AND/OR ENTITIES I-X, | |
| Defendant. | |

Plaintiff, Roselind Tonner ("Plaintiff"), through his undersigned attorney, alleges against Defendant as follows:

### PARTIES, JURISDICTION & VENUE

1.      Plaintiff is an individual and resident of the State of Arizona, Maricopa County.

2.      Plaintiff brings this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq.

3.      The FTCA has an administrative exhaustion requirement under which a claimant, before filing suit, must tender an administrative claim to the federal government.

4.      If the relevant agency does not finally dispose of the administrative claim within six months, then the claimant is deemed to have exhausted administrative remedies. 28 U.S.C. § 2675(a).

5.      Plaintiff was first notified about her possible claims on or about December 9, 2021, and promptly notified the National Park Service Office of Professional Responsibility in June of 2022, making her Complaint timely under 28 U.S.C. § 2401.

6.      Notice was received by the National Park Service Office of Professional Responsibility on June 21, 2022.

7.      Plaintiff filed administrative claims with the relevant federal agencies more than six months ago, and the agencies did not finally dispose of the Plaintiffs' claims.

8.      Because Plaintiffs reside in this District, venue is proper under 28 U.S.C. § 1402(b), and is further proper in this District under 28 U.S.C. § 1391(e)(1) for the additional reason that a substantial part of the events giving rise to this claim occurred within this District.

9.      Defendant, National Park Service ("Defendant"), is an agency of the United States Department of the Interior, and at all relevant times, through and including the present time, as alleged herein, was directly and personally involved in one or more actions affecting Plaintiff.

10.     Additional individuals and/or entities may have participated in the wrongful

conduct alleged in this Complaint (the "Unknown Persons and/or Entities" listed in the caption, above), and will be named if and/or when new information reveals their identities.

11.     Accordingly, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1346, and 28 U.S.C. § 1331 in that this action arises under the laws of the United States of America and is premised on the acts and omissions of the Defendant acting under color of federal law

12.     The Court has personal jurisdiction over the Parties because one of the Parties is a resident in this District, and all acts that form the basis for this Complaint occurred in this District.

## INTRODUCTION

13.     Plaintiff was the victim of Ray Skeet, who has plead guilty in his federal felony case, number CR22-08004-01-PCT-DLR, ("Criminal Case"), for his involvement of secretly filming unsuspecting women in the public restrooms located in the Grand Canyon National Park, while an employee for the National Park Services.

14.     The government's conduct was tortious.

15.     Plaintiff brings this action to seek redress for the harms she suffered as a consequence of the government's conduct.

## FACTUAL BACKGROUND

16.     In August of 2018, Plaintiff, her husband Jeff (together as the "Tonners"), and their friends Cheryl and Chuck Klein (the "Kleins") planned a trip, and secured permits for them to hike the Grand Cannon from January 9 through 13, 2019.

3

17.    The planning of the trip took roughly six (6) months, not just to plan dates and locations, but to get physically prepared for the hikes they would eventually complete.

18.    The Tonners and Kleins spent the nights of January 9 through 11, 2019 at the Phantom Ranch Campgrounds ("Phantom Ranch").

19.    For three (3) days, while at Phantom Ranch, Plaintiff used the ladies' restrooms for all the things normally done in a restroom with privacy including, changing clothing, hygiene, and waste needs.

20.    All of which was likely recorded by Ray Skeet, and employee of the National Park Service.

21.    The Tonners were backpacking with only a small tent, so the use of the Grand Canyon National Park facilities was essential.

22.    Also, during the trip, Plaintiff used the composting toilets in the same manner while at the Indian Gardens Campgrounds ("Indian Gardens"), during her hikes at the Kaibab Trail and the Bright Angel Trail.

23.    On or about December 9, 2021, Plaintiff received a call from Constable Charlene Cossette with the K Division of the Edmonton RCMP.

24.    Constable Cossette confirmed Plaintiff's identity and that she had travelled to the United States of America between 2018 and 2021, more specifically that Plaintiff had been to the Grand Canyon National Park in 2019.

25.    Constable Cossette informed Plaintiff that the Federal Bureau of Investigations ("FBI") was looking for her, and that she had been identified by facial

4

recognition from an article published in the Edmonton Journal.

26.     Constable Cossette stated she would pass all Plaintiff's information on to the FBI, and that it would be in touch with her.

27.     On December 9, 2021, Plaintiff received a call from Abby Confer, Special Agent NPS ("Agent Confer").

28.     Agent Confer wanted to meet with Plaintiff as soon as possible and did so meet later that afternoon.

29.     Agent Confer stated that she wanted to rule Plaintiff out as a victim of voyeurism that had occurred at the Grand Canyon National Park as part of the ongoing investigation.

30.     Plaintiff later found out from Agent Confer after an interview, that Plaintiff was recognized as a victim as a result of the photo recognition process.

31.     Agent Confer instructed Plaintiff to review a press release from the day before.

32.     The article elicits any information regarding visits to specific locations within the Grand Canyon National Park, during the time of November 2018 and December 2020, which the Tonners were in fact present.

33.     Plaintiff was absolutely shocked at the revelation, from what was thought of, up and to that very moment, an epic adventure.

34.     Agent Confer and Ms. Sarah Vasquez, a Victim Specialist with the FBI ("Ms. Vasquez"), arrived at Plaintiff's residence on December 9, 2021, and began a one and a half (1.5) hour recorded interview with the Tonners.

5

35. Plaintiff was first shown a picture of her in which she was wearing her green Arcteryx jacket and her purple toque.

36. Then Plaintiff was shown a picture taken from the Edmonton Journal, a newspaper article published on June 3, 2016, about a bicycle trip to Africa.

37. Plaintiff was asked to confirm that she was the person in the photos, in which Plaintiff confirmed it was her in the photos.

38. Based on the confirmation by Plaintiff Agent Confer was able to confirm that Plaintiff was a victim of voyeurism.

39. The interview continued with several questions regarding all of the restrooms that Plaintiff had used while visiting the Grand Canyon National Park.

40. Ms. Vasquez and Agent Confer also watched a ten (10) minute video that the Tonners made as a memorial of the trip to the Grand Canyon National Park.

41. Ms. Vasquez and Agent Confer asked for several photos to be sent to them, including one (1) of Plaintiff as she started the hike at the top of the Kaibab Trail in which she was wearing the green Arcteryx jacket and the purple toque.

42. Ms. Vasquez and Agent Confer were also interested in several photos of Plaintiff's friend Cheryl, however there was no evidence that photos had been taken of her by Mr. Skeet.

43. At the time of the initial interview with Ms. Vasquez and Agent Confer, Plaintiff did not ask where the photos Ray Skeet had taken of her.

44. Possibly due to the initial shock of what was being revealed to her for the very first time on December 9, 2021.

6

45.     However, the next day after the initial interview, Plaintiff had a follow up phone call with Ms. Vasquez in which Plaintiff was informed the photo taken by Ray Skeet of her came from a mirror in the Phantom Ranch ladies' restroom.

46.     Several hard drives and memory cards, subject to an FBI Search Warrant, were impounded as evidence.

47.     It is unknown how many photos were distributed, traded, or posted anywhere by Mr. Skeet.

48.     However, Plaintiff is left with the fact that a picture, or pictures, of her in an exposed manner will likely live in someone's possession, or online, forever.

49.     Over the next three (3) weeks, Plaintiff's mental state destabilized.

50.     Ms. Vasquez kept checking in on her and gave Plaintiff contact information for Sarah Bridge, a therapist in Scottsdale ("Ms. Bridge"), and in December 2021.

51.     Plaintiff sought treatment from Ms. Bridge and has been diagnosed with Post Traumatic Stress Disorder ("PTSD").

52.     Plaintiff's treatment is ongoing.

53.     On March 3, 2022, Plaintiff received the below email from Mr. Todd McKeeny:

> Good morning, I am a Victim Witness Specialist for the United States Attorney's Office in Phoenix, Arizona. I have been assigned to the United States v. Ray Skeet [Criminal Case]. The National Park Service, with assistance from the Federal Bureau of Investigation, have identified you as a victim in this case. Between November 18, 2018 and September 20, 2020, the defendant video recorded victims within restrooms at the Phantom Ranch campsite at the base of the Grand Canyon.

On March 3, 2022, the Defendant is being charged with several counts of Video Voyeurism, 18 USC § 01801. Also on March 3, 2022, the defendant has indicated he will accept a plea agreement taking full responsibility for his actions. This agreement requires the defendant to plead guilty to 4 counts of Video Voyeurism. The remaining counts will be dismissed, but are considered relevant conduct and are fully considered by the Court at the time of the defendant's sentencing. If the plea agreement is accepted, the Court will sentence the defendant between 2 and 6 years imprisonment. The United States Attorney's Office are likely to argue for a sentence at the high end of that range, and the Defense will argue for less. A period of Supervised Release will also likely be ordered following incarceration. Restitution may also be available to you for losses caused by the victims conduct. These losses are usually for medical expenses, including counseling.

Also, as part of the plea agreement, the defendant will be required to register as a Sex Offender.

Please note that you will have an opportunity to provide the court with a victim impact statement. Our office sends victim impact statement forms to each victim after a defendant has pled guilty, or after being convicted by a jury.

If you have any comments you would like to provide to our office, or to the court, please provide them to me at your earliest convenience. If you have thoughts or concerns regarding the plea agreement, please communicate those with me sometime today. You can email me, or call (602) 514-7576. We apologize for the short notice. Both the NPS and the FBI have been working diligently to identify victims from the defendant's recordings. This process was only communicated late last week, and your information was provided to our office on March 1, 2022.

Sincerely,

Todd S. McKenney
Victim Witness Specialist
United States Attorney's Office
District of Arizona
(602) 514-7576

54.    Plaintiff called Mr. McKenney back immediately and expressed she was not at all in agreement with plea agreement, along with her frustration.

55.    Plaintiff was told the hearing would take place at 11:00 A.M., less than one (1) hour after she received the above email, so there was no way that she could meaningfully participate or attend.

56.    Nonetheless, Plaintiff finally had the name of the defendant in the Criminal Case, Ray Skeet, and she was able to find online the forty-seven (47) page search warrant that was issued for his phones and computer.

57.    The search warrant confirms the investigation into Ray Skeet for video voyeurism in violation of 18 U.S.C. § 1801, that occurred in the restroom near the bottom of the Grand Canyon National Park, at Phantom Ranch.

58.    On or about June 15, 2022, Plaintiff sent the National Park Service Office of Professional Responsibility her Notice of Claim to the National Park Service ("Notice"), pursuant 28 U.S.C § 2675.

59.    Plaintiff's Notice requested a response within six (6) months as required, pursuant to 28 U.S.C § 2675(a).

60.    No response has been received by the National Park Service Office of Professional Responsibility.

## Federal Tort Claims Act

61.    This action shall is instituted upon a claim against the United States for money damages for personal injury caused by the negligent or wrongful act or omission of Ray Skeet, an employee of the Government, while acting within the scope of his

9

employment.

62.     Plaintiff has first presented this claim to the appropriate Federal agency pursuant to 28 U.S.C. §2675(a).

63.     Employees include "employees of any federal agency as defined in 28 U.S.C. §2671.

64.     "Federal agency" includes the executive departments… independent establishments of the United States, acting as instrumentalities or agencies of the United States." *Id.*

65.     The National Park Service, or any federal agency on its behalf, failed to make final disposition of a claim within six months after the Notice was received, and is now deemed a final denial of the claim pursuant to 28 U.S.C. §2675(a).

66.     Ray Skeet was an employee as defined in the FTCA, of the National Park Services.

67.     The National Park Services is a Federal Agency, also as defined under the FTCA.

68.     "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances…"  28 U.S.C. § 2674.

69.     The claims asserted can be those in which the state recognized in which the act or omission occurred.  28 U.S.C. § 2672.

70.     As a direct and proximate cause of Defendant's wrongful conduct, Plaintiff has suffered damages, including damages to be proven at trial.

71.     Plaintiff's demand includes full compensatory and/or statutory damages, in addition to punitive damages.

## COUNT I

### Invasion of Privacy

72.     Plaintiff incorporates by reference paragraphs 1 through 71 and further alleges, inclusive of this Count I, as if fully set forth herein.

73.     Ray Skeet intentionally invaded Plaintiff's privacy by intruding in Plaintiff's private space on Plaintiff's private affairs.

74.     The invasion would be highly offensive to a reasonable person as Plaintiff did feel seriously upset or embarrassed by the invasion;

75.     The invasion was a cause of Plaintiff's injuries and damages.

76.     Plaintiff's injuries include being diagnosed with PTSD, and all resulting medical bills, and treatments.

77.     Ray Skeet's invasion of Plaintiff's privacy was intentional.

78.     Ray Skeet interfered with Plaintiff's privacy on purpose.

79.     It was substantially certain that Ray Skeet's conduct would invade Plaintiff's privacy.

80.     Ray Skeet was an employee of the National Park Service, at the times of the events described herein, and invaded Plaintiff's privacy.

81.     Ray Skeet has entered into a plea agreement to plead guilty to four (4) counts of video voyeurism, that he purposely and intentionally filmed in public restrooms, including Phantom Ranch and others Plaintiff used.

11

82.     Plaintiff, and the public in general, expects privacy when using a restroom, especially under the circumstances in which the Tonners were present in the Grand Canyon National Park.

83.     Plaintiff expected such privacy and used the restrooms in the normal way any person on such a long trip would use, including fully changing clothes, and hygiene needs.

84.     The National Parks Service knew and understood that patrons, including Plaintiff, would use its restrooms in this manner.

85.     Such that certain barriers are placed for such privacy from other users.

86.     The steps Ray Skeet took to film, video, or photograph women, including Plaintiff, was to use his access as an employee of the National Park Service, and place recording devices, or maintain his presence, in areas that would be undetectable to the general public, and Plaintiff.

87.     Plaintiff was recorded unknowingly, certainly without consent, and if it would have been known at the time, against her will.

88.     Plaintiff has been injured and damaged since finding out about her victimization of Ray Skeet's invasion and left to wonder where the photos of her in an exposed state wound up.

89.     Plaintiff has been seeing a therapist and has been diagnosed with PTSD.

90.     Plaintiff will continue to need therapy to help her deal with this ordeal for the rest of her life.

91.     As a direct and proximate cause of Defendant's wrongful conduct, Plaintiff

has suffered damages, including damages to be proven at trial.

92.    Plaintiff's demand includes full compensatory and/or statutory damages, in addition to punitive damages.

## COUNT II

### Intentional Infliction of Emotional Distress

93.    Plaintiff incorporates by reference paragraphs 1 through 92 and further alleges, inclusive of this Count II, as if fully set forth herein.

94.    Ray Skeet's conduct was extreme and outrageous as an average member of the community would regard the conduct as atrocious, intolerable in a civilized community, and beyond all possible bounds of decency.

95.    Ray Skeet's conduct was either intentional as Ray Skeet sought to cause emotional distress, and/or reckless if Ray Skeet is aware of and disregards the near certainty that the conduct would result in emotional distress.

96.    Ray Skeet's conduct caused Plaintiff to suffer severe emotional distress.

97.    Ray Skeet was an employee of the National Park Service, at the times of the incidents described herein, and intentionally inflicted emotional distress on his victims including Plaintiff.

98.    Plaintiff went on a trip to the Grand Canyon National Park, after six (6) months of planning and physical preparation, completed the trip with success, believed it to be a memorious occasion that will last as a positive memory for a lifetime.

99.    Only to later to find out that this trip will always be tarnished by the intentional actions of Ray Skeet to victimize and record women, including Plaintiff, for

his own personal pleasure.

100.   Ray Skeet's actions to obtain the recordings, and actually obtaining the recordings of these women, including Plaintiff was extreme and outrageous.

101.   Plaintiff was injured and damaged since finding out about her being the victim of Ray Skeet's crimes, she has been seeing a therapist, and has been diagnosed with PTSD.

102.   Plaintiff suffers from loss of sleep, anxious thoughts, constant worry of where these pictures of her ultimately went, feelings of numbness and shakiness, hard time reading, confusion, short memory, and of course fear of using any public restroom.

103.   Plaintiff will continue to have therapy to keep her mental health under control for the rest of her life.

104.   As a direct and proximate cause of Defendant's wrongful conduct, Plaintiff has suffered damages, including damages to be proven at trial.

105.   Plaintiff's demand includes full compensatory and/or statutory damages, in addition to punitive damages.

## REQUEST FOR RELIEF

Plaintiff requests judgment against Defendant, as follows:

A.   An order finding Defendant invaded Plaintiff's privacy;

B.   An order finding Defendant intentionally inflicted emotional distress on Plaintiff;

C.   An award of Compensatory Damages;

D.   An award of Punitive Damages

14

E.     An award for costs and reasonable attorney's fees pursuant to 28 U.S. Code § 2678; and,

F.     An award of such other and further relief as this Court may deem to be just, proper, and equitable.

RESPECTFULLY SUBMITTED this 9th day of February, 2023.

By: /s/ Timothy M. Collier
TIMOTHY M. COLLIER
3295 North Drinkwater Blvd., Suite 9
Scottsdale, Arizona 85251
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on February 9, 2023, the foregoing Verified Complaint was filed with the United States District Court, for the District of Arizona, using the CM/ECM system.

s/Tremain Davis
Tremain Davis

VERIFICATION

I, Roselind Tonner, am Plaintiff in the foregoing action, and hereby verify that the statements made in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and/or belief. I relied upon counsel to prepare the Verified Complaint and any legal analysis therein. I understand that false statements hereunder made are subject to the penalty of perjury.

_____
Roselind Tonner

State of Arizona      )
                      )ss
County of Maricopa )

SWORN AND SUBSCRIBED to me this 9th day of February, 2023.

_____
Notary Republic

My commission expires: 01/08/2025

TREMAIN L. DAVIS
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 595235
Expires January 8, 2025

16